**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| S.B., M.B., J.M. Jr., and G.M., minors, by Bruce A. Wolf, their guardian ad litem, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA AND STATE OF WASHINGTON <br><br> Defendants. | No. 2:19-cv-00069-RSL <br><br> PLAINTIFFS' FIRST AMENDED COMPLAINT FOR PERSONAL AND PHYSICAL INJURIES AND DAMAGES |

Plaintiffs S.B., M.B., J.M. Jr., and G.M., through their litigation guardian ad litem Bruce A. Wolf, allege:

## I. INTRODUCTION

1.1   Plaintiffs S.B., M.B., J.M. Jr., and G.M. for years remained in the care and custody of their biological mother, which resulted in them being subjected to sexual abuse and neglect over that period. The Muckleshoot Indian Tribe ("Tribe") and the Washington State Department of Social and Health Services ("DSHS") received multiple complaints about the abuse and neglect that the children were suffering. Eventually, after completing several investigations, DSHS and the Tribe concluded that the reports of abuse and neglect were

PLAINTIFFS' FIRST AMENDED COMPLAINT – 1

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

founded. The children were removed from the home of their mother on at least two occasions and transferred to other homes on the Muckleshoot reservation. Yet the children were always returned by Defendants to the home of their mother, even though they faced regular contact with a registered sex offender there. Although Defendants knew these children would be exposed to this sex offender, they did nothing to protect them from him.

1.2 The children fared no better in some homes they were placed in after being removed from their mother's home. Defendants failed to complete a home study for any of the homes in which these children were placed. Defendants knew or should have known that the homes these children were placed in presented a substantial risk to their health, safety, and welfare. Defendants' conduct evidenced a complete disregard for the health, safety, and welfare of the children they owed a duty to protect. Because of Defendants' negligent failure to protect these children, Plaintiffs were repeatedly sexually abused by persons who should never have had access to them.

## II. PARTIES

2.1 Plaintiff S.B. is a child who was born in 2002.

2.2 Plaintiff M.B. is a child who was born in 2003.

2.3 Plaintiff J.M. Jr. is a child who was born in 2005.

2.4 Plaintiff G.M. is a child who was born in 2008.

2.5 Bruce A. Wolf was appointed by the King County Superior Court as the guardian ad litem for the Plaintiffs.

2.6 Defendant United States of America is a sovereign nation and at all times provided funding, through its sub-agencies the Bureau of Indian Affairs ("BIA") and the Department of Health and Human Services ("DHHS"), to the Tribe, including funding for

PLAINTIFFS' FIRST AMENDED COMPLAINT – 2

LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

programs intended to assure the health, safety, and welfare of Plaintiffs. Employees of the Tribe were directly involved in providing services and programs, which were funded through Indian Self–Determination and Education Assistance Act ("ISDEAA") contracts with Defendant, for the benefit and protection of S.B., M.B., J.M. Jr., and G.M.

2.7   Defendant State of Washington ("State") is a political entity with its capital in Olympia, Washington. At all times relevant to this Complaint, the State acted through its employees at DSHS.[1]

### III.   JURISDICTION AND VENUE

3.1   This action as to the Tribe is brought under the Federal Tort Claims Act, 28 U.S.C. § 2674, 28 U.S.C. § 1346(b), and 25 U.S.C. § 5321. The alleged acts and omissions committed by the Tribe occurred in the Western District of Washington.

3.2   On February 27, 2018, each Plaintiff filed a claim for damages with the BIA under 28 U.S.C. § 2672. On August 16, 2018, these claims were denied.

3.3.   On February 27, 2018, each Plaintiff filed a claim for damages with DHHS under 28 U.S.C. § 2672. DHHS did not respond to Plaintiffs' claims within the time limits established by statute.

3.4   S.B., M.B., J.M. Jr., and G.M. have filed standard tort claims with the Washington State Office of Risk Management, under Chapter 4.92 RCW. Over sixty (60) days have elapsed since the claim was filed. The notice of claim provisions required by RCW 4.92 have been satisfied. The State has consented to this suit. Consequently, this Court has jurisdiction under 28 U.S.C. § 1367.

---

[1] On July 1, 2018, Children's Administration, which includes Child Protective Services (CPS), transitioned from DSHS to the new Department of Children, Youth, and Families. As all relevant acts and omissions alleged by Plaintiffs occurred before that date, the DSHS acronym is used here.

PLAINTIFFS' FIRST AMENDED COMPLAINT – 3    LAW OFFICES OF RESSLER & TESH
821 SECOND AVENUE, SUITE 2200
SEATTLE, WA 98104
(206) 388-0333

## IV. FACTS

4.1   S.B. and M.B. are the biological children of Jana Bellack and Nickolas Bakke. Beginning in 2006, S.B. and M.B. lived with Jana Bellack and Jonathan S. Moses Sr.

4.2   J.M. Jr. and G.M. are the biological children of Jonathan S. Moses Sr. and Jana Bellack.

4.3   In 2013, Plaintiffs were removed from the care and custody of Bellack by DSHS and the Tribe, based on its finding that the children had been abused and neglected.

4.4   Between 2001 and 2013, and prior to the removal, DSHS and the Tribe received at least 20 reports warranting "screen in" designation concerning the four children. All the reports involved allegations of abuse and neglect. Three resulted in founded allegations of neglect.

4.5   In 2005, and again in 2007, DSHS and the Tribe removed Plaintiffs from Bellack's home and temporarily placed them with relatives.

4.6   Although DSHS and the Tribe knew that Bellack was living with a registered sex offender, they returned Plaintiffs to Bellack. They did not require that the sex offender move from the residence prior to returning the children.

4.7   While the children were in Bellack's home, DSHS and the Tribe received multiple reports of sexual abuse, neglect, the use of alcohol and methamphetamines by the adults charged with the care of the children. DSHS and the Tribe ignored these reports.

4.8   On May 13, 2005, DSHS and the Tribe received a referral that M.B. was whimpering, continually putting her hands down her pants, and scratching herself. When M.B.'s diaper was removed, the referent noticed that the child's "whole bottom had a huge blanket of

scabs." In this report it was noted that Moses Sr. was a Level 2 registered sex offender, and that he lived with Bellack and her children.

4.9     On May 31, 2005, Francis Cacalda of the Tribe was assigned to complete an investigative assessment and follow up on the DSHS intake report from May 13, 2005. The referral was declared unfounded and further investigation was not completed. Nothing was done by either the Tribe or DSHS regarding the report of the children living with a convicted felon and a registered sex offender.

4.10    On October 21, 2005, Bellack was involved in a car accident while intoxicated. At the time of the accident, Plaintiffs were passengers in the car. M.B. suffered a broken arm. The report made to the Tribe and to DSHS concerning the drunken driving and the injuries sustained by M.B. included reference to S.B. and M.B. living with Moses Sr., who was noted to be a registered sex offender. No immediate action was taken by DSHS or the Tribe regarding the facts that the Plaintiffs were living with a registered sex offender, or that their mother had injured her child while driving drunk.

4.11    On March 6, 2006, DSHS completed its investigative assessment regarding the October 21, 2005 car accident. This report of abuse and neglect was determined to be founded. DSHS and the Tribe removed S.B., M.B., and J.M. Jr. from the custody of their mother and temporarily placed them with extended family members. The case was subsequently closed. DSHS and the Tribe moved the children from their temporary placement back to the home of their mother, where registered sex offender Moses Sr. still resided. The tribal and state social workers knew that Moses Sr. was living in the home when they placed the children there.

4.12    On January 17, 2007, DSHS and the Tribe opened an investigation in response to a report that Bellack was intoxicated during a domestic violence incident in her home. DSHS

noted that Bellack was "extremely intoxicated and . . . unable to provide adequate care and supervision." As part of the investigative assessment of Bellack, she was "found to be intoxicated during welfare check by police and when CPS visited." Based on the actions of Bellack, S.B., M.B., and J.M. Jr. were placed with relatives. The children were later permitted to return to Bellack's home, where registered sex offender Moses Sr. was still residing. The report relating to the removal and return of the children again noted that Moses Sr. continued to live in the home, and that he was a a registered sex offender.

4.13   On April 29, 2008, DSHS and the Tribe received a report that M.B. had disclosed that "my dad always whoops my ass." It was understood that she was referring to Moses Sr. No action was taken by DSHS or the Tribe.

4.14   On March 18, 2009, DSHS and the Tribe received a report that M.B. "had a rash down there and M.B. pointed to her private area," and that she had been complaining for a week. M.B. was described as having poor hygiene and wearing dirty clothes. The report included details about Moses Sr., including that he was "convicted, in 1995, of Attempted Rape 1." DSHS noted there was a referral received on November 6, 2008, and that DSHS and the Tribe had taken no action regarding that referral.

4.15   On March 19, 2009, another report was received by DSHS and the Tribe. The report repeatedly referred to the fact that Moses Sr. was a registered sex offender. In addition, Plaintiffs had reported that they were hungry and had no food in their home. It was noted that Plaintiffs had a history of suffering abuse and neglect.

4.16   On October 12, 2009, an investigation assessment was completed for the reports made on March 18 and 19, 2009. DSHS concluded that the allegations in these reports were

unfounded. In the investigation notes, social workers again noted that Moses Sr. was a registered sex offender and that he was residing at Bellack's home.

4.17   On December 1, 2011, it was reported to DSHS and the Tribe that S.B. had a black eye. In that report it was again noted that Moses Sr. was a registered sex offender. In addition, the DSHS social worker noted:

> "[D]iscussed with the Muckleshoot Case manager Laurel Kelly that father Johnny Moses Sr. who is the live-in boyfriend of Jana Bellack is a Level 2 [registered sex offender] and they had no concerns. The Muckleshoot tribe stated that this case should [be] closed out because the father's convictions are old, and the father Johnny Moses was nineteen years old at the time of the incident and the victim was fifteen years old at the time of his conviction."

4.18   DSHS and the Tribe accepted Bellack and Moses Sr.'s self-report that the conviction was for statutory rape, even though DSHS records noted the crime to be Attempted Rape in the First Degree, contrary to Bellack and Moses Sr.'s self-report. DSHS and the Tribe ignored State, Federal, and Tribal rules and policies that disqualified a person with a conviction of this crime from having unsupervised access to children.

4.19   DSHS and the Tribe did not try to obtain the criminal records of the Attempted Rape in the First-Degree conviction. The records of that crime describe Moses Sr. using a six-inch blade in his attempt to rape his victim.

4.20   In addition, DSHS and the Tribe did not obtain Moses Sr.'s criminal history, which included convictions for Assault in the Second Degree and Unlawful Firearm Possession, besides his sex offense conviction.

4.21   On March 14, 2012, DSHS and the Tribe received a report that S.B. had been displaying "anger rages" at school. The referrer stated these types of incidents had occurred multiple times since October 2011. DSHS once again noted that Moses Sr. resided in the same house as S.B. and that he was "a [registered sex offender] Level 2." In the investigative

assessment completed on June 10, 2012, DSHS concluded that the case was unfounded and closed it without action, purportedly because Bellack was "aware of her child's behavioral [sic] at school." The social worker who determined that the referral was unfounded noted in the report that S.B. was "very scared and does not want to go home." The report provides no additional information about why the child was afraid to be at home.

4.22  On May 2, 2013, Plaintiffs were removed from Bellack's home after M.B. was accidentally shot in the leg while she and a sibling were handling a loaded rifle. The incident was referred to DSHS and the Tribe. It was reported that the rifle was kept under a bed and was unsecured. The police officer responding to the scene stated that the "living conditions in the home were filthy and disgusting and that he had taken photographs of the home."

4.23  Throughout the time Plaintiffs were in the Bellack home, they were abused and neglected.

4.24  On or around May 3, 2013, M.B. was placed with Moses Sr.'s sister, Sarah Moses. No home study was completed prior to this placement. No background checks were completed on Sarah Moses or the other adults residing in her home with access to M.B. Sarah Moses' partner, whose first name was Juan, lived in her home. Plaintiffs were abused and neglected while in Sarah Moses' home by both Sarah Moses and Juan. No health and safety visits were completed during the time of this placement.

4.25  S.B. and M.B., at different times over the following months, were placed with Shawny Starr, who was not related to the children. Starr was a relative of the Tribe's foster home licensor, although Starr herself was not licensed. No home study was completed prior to the placement of these children in this unlicensed home. No background checks were completed

on Starr or any of the adults residing in her home. At that time, Starr was living with a person named Iosefa Aukusitino.

4.26    S.B. and M.B. were abused and neglected while in Starr's home, including sexual abuse by Aukusitino. No health and safety visits were completed by DSHS or the Tribe while the children were living in this unlicensed placement.

4.27    On July 24, 2014, S.B. was placed at Ryther Center for Children & Youth. On October 20, 2014, S.B. underwent a psychological exam performed by Dr. Rochelle Coffey, a psychologist at the center. She diagnosed S.B. with PTSD and a history of neglect. Dr. Coffey expounded on S.B.'s childhood experience, opining that "repeated physical and emotional abuse and neglect has resulted in complex developmental trauma."

4.28    M.B., J.M. Jr., and G.M. have also exhibited signs of significant trauma from the abuse and neglect they suffered over the years.

## V.  CAUSES OF ACTION

### COUNT I: NEGLIGENT INVESTIGATION

5.1    Defendants owed a duty to S.B., M.B., J.M. Jr., and G.M. to properly investigate reports related to Plaintiffs and the Bellack home. In addition, Defendants had a duty to properly investigate and monitor the other homes where Plaintiffs were placed.

5.2    Defendants breached this duty by conducting faulty or incomplete investigations.

5.3    Defendants' breach proximately caused a harmful placement decision which resulted in severe injuries to S.B., M.B., J.M. Jr., and G.M.

### COUNT II: NEGLIGENCE

5.4    Defendants owed a duty to protect S.B., M.B., J.M. Jr., and G.M. against child abuse and neglect.

5.5     Defendants breached this duty by failing to conduct a reasonable investigation of reports related to Plaintiffs and the Bellack home. In addition, Defendants failed to properly investigate and monitor the other homes in which Plaintiffs were placed.

5.6     Defendants' breach proximately caused S.B., M.B., J.M. Jr., and G.M. to suffer severe injuries.

## VI.  INJURIES AND DAMAGES

6.1     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs have sustained past general and special damages and will sustain future general and special damages, including, but not limited to:

    a.  Past, present, and future pain and suffering, both physical and emotional;

    b.  Past present, and future psychological trauma and impairment;

    c.  Past, present, and future loss of enjoyment of life;

    d.  Medical bills and other expenses for future treatment;

    e.  Loss of earning capacity; and

    f.  Loss of educational opportunities.

6.2     All of the above damages are in an amount which will be proved at trial.

## VII.  RELIEF SOUGHT

Plaintiffs pray for judgment against Defendants as follows:

7.1     For an award of general damages, in an amount to be determined at trial;

7.2     For an award of special damages, in an amount to be determined at trial;

7.3     For an award of costs and reasonable attorneys' fees; and

7.4     For such further relief as the Court deems just and proper.

DATED this 9th day of April, 2019.

                                          s/ Allen M. Ressler_____
                                          Allen M. Ressler, WSBA #5330
                                          Ressler & Tesh PLLC
                                          821 Second Avenue, Suite 2200
                                          Seattle, WA 98104
                                          Telephone: (206) 388-0333
                                          Fax: (206) 388-0197
                                          Email: allen@resslertesh.com